**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MALIBU MEDIA, LLC | : |
| | : |
| v. | : Civil No. CCB-15-1700 |
| | : |
| [REDACTED] | : |

**MEMORANDUM**

Malibu Media, LLC ("Malibu"), sued the defendant for copyright infringement under 17 U.S.C. §§ 101 *et seq*. The defendant has failed to respond to the complaint. Malibu sought and received, pursuant to Rule 55 of the Federal Rules of Civil Procedure, an order of default. Pending before the court is Malibu's motion for entry of default judgment. (Mot. Default J., ECF No. 17). For the reasons that follow, the motion will be granted.

**BACKGROUND**

Malibu holds the copyrights to various adult films. (Am. Compl., Copyrights-in-Suit, ECF No. 7-2). It distributes these films through its website, X-Art.com. (Mot. Leave, Field Decl. ¶¶ 3, 12, ECF No. 3-2). In order to access these films, Malibu's customers pay a subscription fee of $24.95 per month or $99.95 per year. *Id.* ¶ 12. As is common with online content, many of Malibu's films end up on a popular file distribution network known as BitTorrent. *Id.* ¶ 16.

BitTorrent is a peer-to-peer file sharing system used to distribute all manner of electronic content. (Am. Compl. ¶ 11, ECF No. 7). To obtain a particular file, a user joins what is referred to as a "swarm"; that is, a group of users downloading and distributing the same torrent file. The

1

BitTorrent technology works by breaking the torrent file into small "bits." *Id.* ¶ 13. Users within the swarm exchange these bits with one another, essentially turning each user into both a downloader and distributor of the content contained in the torrent file. Once a user receives all of a torrent file's bits, the BitTorrent software reassembles the bits so that the file may be opened and the user can access its contents. *Id.* ¶ 14.

Malibu alleges the defendant used the BitTorrent network, as a member of a particular swarm, to download and distribute a torrent file labeled, for the purposes of this litigation, "X-art Unauthorized Pack #89." *Id.* ¶¶ 22–24. This file contained 127 films for which Malibu holds the copyright. The defendant has not responded to these allegations. Malibu now seeks a default judgment and an award of statutory damages, attorneys' fees and costs, and injunctive relief.

## ANALYSIS

**Statutory Damages**

Malibu requests statutory damages in the amount of $1,500 per video, for a total of $190,500. In lieu of actual damages and profits, a plaintiff may recover "an award of statutory damages for all infringements involved in the action . . . in a sum of not less than $750 or more than $30,000 as the court considers just"; for willful violations, the maximum amount may be increased to $150,000. *See* 17 U.S.C. § 504(c)(1)–(2).[1] "The Court has broad discretion in setting the amount of statutory damages under the Copyright Act." *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077, 1091 (D. Md. 1995) (citing *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 108 (4th Cir.1991)). For the reasons that follow, the court will award statutory damages in the minimum amount of $750 per video, for a total of $95,250.

---

[1] The minimum statutory damages award may be reduced to $200 per work in the event the "infringer was not aware and had no reason to believe that his or her acts constituted an infringement of the copyright." 17 U.S.C. § 504(c)(2). The alleged infringer bears the burden of proof under section 504(c)(2); because the defendant has not answered the complaint, the court does not consider a reduction of damages under this provision.

In setting a statutory damages award, courts consider a variety of factors, including (1) whether the defendant was the original provider of the infringed content to its distribution network; (2) whether, and how much, the defendant profited or saved in connection with the infringement; (3) the plaintiff's actual losses; (4) whether the plaintiff's request would result in a "windfall"; (5) the deterrent effect of statutory damages; and (6) the defendant's willfulness and intent in infringing the plaintiff's protected content. *See, e.g. Malibu Media, LLC v. Flanagan*, Civil No. 2:13-5890, 2014 WL 2957701, at *4 (E.D. Pa. July 1, 2014) (considering factors 1, 2, 3, and 5); *Malibu Media, LLC v. Goodrich*, Civil No. 12-01394-WYD-MEH, 2013 WL 6670236, at *11 (D. Colo. Dec. 18, 2013) (considering factor 6); *Malibu Media, LLC v. Brenneman*, Civil No. 3:13-332-PPS, 2013 WL 6560387, at *2–3 (N.D. Ind. Dec. 13, 2013) (considering factors 3, 4, and 5).

In the instant case, these factors weigh in favor of awarding the minimum statutory damages. First, Malibu has proffered no evidence suggesting the defendant was the original "seed" or provider of the protected content on the BitTorrent network. It only alleges that the defendant was "part of a BitTorrent 'swarm.'" (Mem. Supp. Mot. Default J. 7, ECF No. 17-1). Further, while Malibu contends there are thousands of members of this swarm, it has not shown how many of these members actually downloaded the files from the defendant's computer or server.

Second, Malibu has not alleged that the defendant profited from this infringement. It only alleges that he distributed portions of its protected material for free via the BitTorrent network. As for the defendant saving money, it could be only the cost of a monthly or annual subscription to X-Art.com.

Third, Malibu has not provided any evidence regarding its actual damages. Malibu asserts that its "actual damages are the lost sales of its content to those thousands of infringers [in

3

the swarm]. In the aggregate, these lost sales far exceed $190,500." *Id.* at 10. Malibu has not proffered evidence on how many infringers, if any, would have paid for an X-Art.com subscription were they unable to obtain the content via BitTorrent.

Fourth, an award totaling $190,500 would be a "windfall" for Malibu considering the nature of the infringement and the questionable amount of lost profits attributable to this particular defendant. Awarding the statutory minimum of $750 per work would entitle Malibu to recover $95,250 in statutory damages, an amount certainly sufficient to deter future violations.

Finally, the court declines to double the statutory minimum as a sanction for the defendant's purported willfulness. While the defendant is deemed to have admitted the factual allegations against him on default, he is not deemed to have accepted Malibu's legal argument as to willfulness. The defendant's use of BitTorrent shows he likely knew that he was infringing on Malibu's copyrights; however, on the available evidence, the extent and nature of the defendant's willfulness cannot be known. Accordingly, the court does not weigh the issue of willfulness heavily in its analysis.

Having considered the relevant factors, the court will award Malibu the statutory minimum damages of $750 per film, for a total of $95,250.[2]

**Injunctive Relief**

Malibu requests an order "[p]ermanently enjoining Defendant from directly, contributorily or indirectly infringing Plaintiff's rights under federal or state law of Plaintiff's copyrighted works." (Mem. Supp. Mot. Default J. 15, ECF No. 17-1). Additionally, it requests an order requiring the defendant to "destroy all copies of Plaintiff's Works that Defendant has

---

[2] Considering the excessive nature of this statutorily required minimum award as compared to Malibu's actual damages and what appears to be the relative culpability of this particular defendant, the court notes that the defendant may seek to have this default judgment vacated, if he has grounds to do so, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Further, the court does not address the issue of joint and several liability as it may apply to Malibu's ability to recover damages in this case.

downloaded onto any computer hard drive or server without Plaintiff's authorization, and [to] destroy all copies of the Works transferred onto any physical medium or device in Defendant's possession, custody or control." *Id*. To obtain a permanent injunction, "a plaintiff must show (1) irreparable injury, (2) remedies at law are inadequate to compensate for that injury, (3) the balance of hardships between the plaintiff and defendant warrants a remedy, and (4) an injunction would not disserve the public interest." *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) (internal quotation marks omitted) (quoting *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 156–57 (2010)).

The plaintiff has shown it will suffer irreparable injury if no action is taken; the continued presence of the torrent file on the defendant's computer makes Malibu's protected content available for others to acquire via the BitTorrent network. Second, remedies at law are inadequate; the plaintiff cannot recover again for continued infringement of the same work. Third, the balance of hardships clearly favors the plaintiff; the defendant need only delete and not download further infringing content. Finally, the public interest in enforcement of the federal copyright laws is clear. Accordingly, the court will grant Malibu's request for a permanent injunction. Further, the court will grant Malibu's request as to the destruction of any infringing copies of its works pursuant to 17 U.S.C. § 503(b).

**Costs and Attorneys' Fees**

Malibu requests $1,632 in costs and attorneys' fees pursuant to 17 U.S.C. § 505. Having reviewed the affidavit of Malibu's counsel, (Mot. Default J., Hoppe Decl. ¶¶ 8–9, ECF No. 17-5), the court finds this amount to be reasonable considering the circumstances of this case. Accordingly, it will grant Malibu's request for costs and attorneys' fees.

## CONCLUSION

For the foregoing reasons, Malibu's motion for default judgment will be granted. The court will award statutory damages in the amount of $95,250 and costs and attorneys' fees in the amount of $1,632.  Further, Malibu's requests for a permanent injunction and an order instructing the defendant to destroy all infringing copies of the plaintiff's work will be granted.

A separate order follows.

    1/21/16                                                               /S/
Date                                                               Catherine C. Blake
                                                                   United States District Judge